Alvaro GARCIA, Plaintiff,

v.

Richard ELROD, Defendant.

No. 86 C 4779.

United States District Court,
N.D. Illinois, E.D.

Sept. 5, 1986.

Edward Mogul, Chicago, Ill., for plaintiff.

Karen Dimond, Asst. State's Atty., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Alvaro Garcia ("Garcia") has filed a 28 U.S.C. § 2254 ("Section 2254") petition against Cook County Sheriff Richard Elrod ("Sheriff"), seeking a writ of habeas corpus because of Garcia's allegedly unconstitutional pretrial detention on state drug charges. Sheriff has filed an answer (the "Answer") and, after this Court's July 22 oral bench ruling had found the Answer

legally insufficient, an amended answer (the "Amended Answer") to Garcia's petition. For the reasons stated in this memorandum opinion and order, Garcia's petition for a writ is granted.

█ Both Garcia and Sheriff, through their respective counsel, have agreed no evidentiary hearing is required to supplement the record tendered to this Court. They are right, for the transcripts of the state court bond proceedings (September 25, 1985 ("Tr. 1—") and October 3, 1985 ("Tr. 2—")) pose the constitutional question as entirely one of law. Accordingly the petition may properly be dealt with on the basis of that state court record (see Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts).

█ One threshold matter, dealt with by this Court in its July 22 oral ruling, should be mentioned first. Sheriff's Answer had asserted Garcia's failure to exhaust state remedies. But Garcia has brought the selfsame excessive bond question to the Illinois Supreme Court in direct conformity with Illinois Supreme Court Rule 604(c), Ill.Rev.Stat. ch. 110A, ¶ 604(c) (having first taken the question to the Illinois Appellate Court, as the same rule required). Under Illinois law (*People v. Saunders*, 122 Ill. App.3d 922, 928, 78 Ill.Dec. 172, 177, 461 N.E.2d 1006, 1011 (2d Dist.1984)) Rule 604(c) has become a pretrial defendant's "sole avenue of relief," having supplanted the earlier availability of an original petition to the Supreme Court for a writ of habeas corpus. No Illinois law supports, and there is no point in compelling Garcia to search for, any alternative route of state relief (whether the now-superseded state habeas corpus or otherwise).

This Court then proceeds to the merits. No issue of any claimed (and likely nonexistent, see discussion in *United States v. DiVarco*, 602 F.Supp. 1029, 1033–34 (N.D. Ill.1985) and cases cited there) unqualified "right to bail" is involved. Nor does Garcia challenge the constitutionality of the recently-enacted Illinois Bail Act as embodied in Ill.Rev.Stat. ch. 38, ¶ 110–5(a) and (b) ("Section 110–5"), pursuant to which Circuit Judge Thaddeus Kowalski assertedly set bail for Garcia:

(a) In determining the amount of monetary bail or conditions of release, if any, which will reasonably assure the appearance of a defendant as required or the safety of any other person or the community, the court shall, on the basis of available information, take into account such matters as the nature and circumstances of the offense charged, the condition of the victim, the likelihood of the filing of a greater charge, the weight of the evidence against such defendant, his family ties, employment, financial resources, character and mental condition, past conduct, prior use of alias names or dates of birth, length of residence in the community, whether a foreign national defendant is lawfully admitted in the United States of America, the amount of unrecovered proceeds lost as a result of the alleged offense, record of convictions, and any record of appearance at court proceedings, flight to avoid arrest or prosecution, escape or attempted escape to avoid arrest, or failure to appear at court proceedings. Information used by the court in its findings or stated in or offered in connection with this Section may be by way of proffer based upon reliable information offered by the State or defendant. A proffer by the State must be based upon a written report. All evidence shall be admissible if it is relevant and reliable regardless of whether it would be admissible under the rules of evidence applicable at criminal trials.

(b) The amount of bail shall be:

(1) Sufficient to assure compliance with the conditions set forth in the bail bond;

(2) Not oppressive;

(3) Considerate of the financial ability of the accused.

(4) When a person is charged with a drug related offense involving possession or delivery of cannabis or possession or delivery of a controlled substance as defined in the Cannabis Con-

trol Act, as amended, or the Illinois Controlled Substances Act, as amended, the full street value of the drugs seized shall be considered. "Street value" shall be determined by the court on the basis of a proffer by the State based upon reliable information of a law enforcement official contained in a written report as to the amount seized and such proffer may be used by the court as to the current street value of the smallest unit of the drug seized.

■ Instead the Eighth Amendment[1] question for this Court is that identified in *United States ex rel. Fitzgerald v. Jordan,* 747 F.2d 1120, 1133 (7th Cir.1984), quoting *Simon v. Woodson,* 454 F.2d 161, 165 (5th Cir.1972) (emphasis in original):

Thus, the only issue to be resolved by a federal court presented with a habeas corpus petition that complains of excessive bail is whether the state judge has acted *arbitrarily* in setting that bail.

That accurately describes what happened in Garcia's case. Confronted with charges of distribution of cocaine and a drug conspiracy of major proportions,[2] Judge Kowalski originally set Garcia's bail at $12 million (Tr. 1–28). Then on the motion for reduction a week later, Judge Kowalski focused on the week-old new version of Section 110–5 (it had been signed by Governor Thompson, and thus became effective, on the very same day as the original hearing) and lowered the bond to $607,000, the same amount as the asserted street value of the seized cocaine. Judge Kowalski said only (Tr. 2–53 to –54):

THE COURT: I have the issue in front of me and I have to resolve it. I look upon this case as the case where the legislature is speaking to me under Section 110–7, stating it is a Class X felony, and the Court may require the Defendant to deposit a sum equal to 100 percent of the bail and as to the value. Therefore, on Mr. Garcia and on Mr. Fleites, I will set the bond at $607,000 cash, and I will make it $150,000 on Mr. Noriega, cash.

Though Judge Kowalski did not articulate his reasons for acting as he did in Garcia's case, what is plain is that the judge's decision was *controlled* by the asserted street value of the narcotics rather than, as the statute required, the "full street value of the drugs seized [being] considered."[3] It is quite apparent that had the street value been calculated at (say, to pick another figure arbitrarily) $502,000,[4] *that* would have been the amount of the bond. And of course the *legitimate* constitutional considerations for setting bond—essentially to assure the defendant's appearance in court when required and to assure the safety of other persons and the community[5]—are not at all arithmetically proportionate to the amount involved in the drug transaction (at least where, as in this case, the defendant no longer has either

1. As this Court frequently observes, the practice of litigants and courts in referring to underlying Bill of Rights provisions where state actors are involved, though imprecise, is often convenient. Garcia's claim, of course, is a Fourteenth Amendment due process claim that incorporates the Eighth Amendment's guaranty against imposition of "excessive bail."

2. Testimony disclosed the delivery of a kilogram of 90%–pure, high-grade cocaine (Tr. 1–7 to –10) with an asserted total street value of $607,722 (Tr. 1–4), together with negotiations for future deliveries of a great deal more cocaine (Tr. 1–10 to –11).

3. Codefendant Noriega was obviously placed under a lower bond because of other (and of course permissible) considerations (Tr. 2–54):

THE COURT: ....He was just the person that drove the car. We heard nothing other than that although he was there and drove the other two.

4. There was of course no magic about the $607,-722 figure. What was *paid* for the kilogram of cocaine was $42,500. That was translated to the nearly 15–fold higher figure by use of a chart (see Tr. 1–18 to –19) that obviously subsumed various assumptions about cutting the cocaine for individual consumption and about realizable market value of the ensuing small-quantity distributions.

5. Section 110–5(b)(1), (2) and (3)—as well as Section 110–5(a)—set out the entirely appropriate criteria for application by the judge setting the amount of bail.

the drugs or their value as a potential means and incentive for flight).

This Court should not be misunderstood as finding, or even suggesting, what a *proper* and *non-arbitrary* consideration of the relevant factors would generate in terms of a bail figure. With all relevant evidence before the state court, and with the proper considerations being applied, it is perhaps conceivable that $607,000 in bail might be called for—though on the record before Judge Kowalski that amount was certainly arbitrarily excessive, and that record does not suggest any real likelihood that further inquiry would show that figure to be proper. That decision, however, is for the state court judge to make.

■ But what controls this habeas case is that the state court judge cannot, in reaching that decision, do what Judge Kowalski has done to Garcia: surrender his judicial discretion in favor of setting a bail amount identical to the drugs' street value, on the mistaken assumption the Illinois General Assembly has equated street value with reasonable bail. It has not.[6] There is no unconstitutional infirmity in the Act— only in its erroneous application here.

Accordingly the petition for a writ of habeas corpus is granted. Because all Garcia is entitled to is a constitutional setting of bail, not freedom per se, issuance of the writ will be stayed until September 30, 1986 to permit a bond hearing applying constitutionally permissible standards.

---

6. If it had, that equation would have been equally arbitrary, thus itself running afoul of the Eighth Amendment.