UNITED STATES of America ex rel.
William VITORATOS, Petitioner,

v.

Robert D. CAMPBELL and J. H.
Havener, Supt., Respondents.

No. C 75-84 A.

United States District Court,
N. D. Ohio, E. D.

March 16, 1976.

William Vitoratos, pro se.

Robert D. Doane, Asst. Atty. Gen., Columbus, Ohio, for respondents.

## MEMORANDUM OPINION AND ORDER

LAMBROS, District Judge.

Petitioner, William Vitoratos, is presently incarcerated at the Southern Ohio Correctional Facility (hereinafter SOCF). Petitioner, proceeding *pro se* pursuant to 28 U.S.C. § 2241 *et seq.*, seeks his release through a writ of habeas corpus which challenges the revocation of his parole by the Ohio Adult Parole Authority (hereinafter Authority). It appears that petitioner has exhausted his adequate and available state remedies.

Upon due consideration of the pleadings, records, and exhibits of the parties, which are so complete as to obviate the necessity for an evidentiary hearing, the Court finds the requested relief should be denied.

## I. FACTS

In June 1959 petitioner was convicted of sodomy and sentenced to imprisonment in the Ohio Penitentiary for a term from one to twenty years. In December 1966 petitioner was granted parole on this conviction, but was returned to the penitentiary in November 1968 upon being convicted of sodomy a second time. Petitioner had been given an additional sentence of one to twenty years imprisonment for his second conviction, the sentence to run concurrently with petitioner's first sentence.

Petitioner was paroled for a second time in December 1973. After being paroled petitioner supported himself by dealing in antiques and performing odd jobs. Unknown to the Authority, on September 26, 1974 petitioner was arrested by the Akron Police Department on a charge of attempted rape, later amended to rape, and released on bond. When the above arrest was discovered by the Authority, petitioner was rearrested on October 7, 1974 by his parole officer. Petitioner was notified that his preliminary hearing on the criminal charge would take place on October 8, 1974 and that it would also serve as his on-site hearing to determine whether or not he had violated condition three of his parole agreement, to wit "Obey all municipal ordinances, state and federal laws, and at all times conduct yourself as a responsible law abiding citizen." Probable cause was established by the Akron Municipal Court at the hearing and petitioner was bound over to the Summit County Grand Jury on the charge of rape. Petitioner was subsequently indicted, convicted in trial by jury on February 5, 1975 and sentenced to a term from seven to twenty-five years. Pursuant to O.R.C. § 2929.41(B)(3), this sentence runs consecutively with petitioner's prior sentences. Petitioner's appeal of this conviction is presently pending.

At the preliminary hearing it was established that during the course of the rape offense petitioner had in his possession and control a bayonet. Petitioner was notified that possession of the bayonet constituted a violation of condition four of his parole agreement, "Never purchase, own, possess, use or have under your control, a deadly weapon or firearm", and that an on-site hearing for such violation would be held October 18, 1974. Petitioner was present with counsel at such hearing and hearing officer Crew found probable cause that a violation existed. Petitioner was thereafter detained in the Summit County jail for this violation. On October 25, 1974 petitioner was given notice of the on-site hearing findings and that a formal revocation hearing would be held at the SOCF the week of November 22, 1974. At petitioner's request the formal hearing was postponed until December 4, 1974. Petitioner being in the custody of the Authority, was returned to the SOCF November 13, 1974.

Prior to his formal hearing petitioner was notified of his right to the disclosure of evidence against him, the right to be heard and present witnesses, the right to confront and cross-examine witnesses testifying against him, and the right to a written statement of findings should his parole be revoked. Petitioner requested the presence of nine witnesses, state funds to pay the travel expenses of these

witnesses, and appointed counsel. Petitioner's requests for travel funds and appointed counsel were denied. With the exception of hearing officer Crew, who was present, petitioner's requested witnesses failed to appear at the hearing.

At the formal hearing petitioner admitted having possession of the bayonet, but asserted that the bayonet was an antique and therefore outside the scope of parole condition four. Petitioner alleged that the testimony of his requested witnesses would have established him as an antique dealer. Pursuant to his formal hearing, petitioner's parole was revoked until November 1977.

## II. PETITIONER'S ARGUMENT

Petitioner contends that his parole revocation was invalid in that:

1. The Authority deprived petitioner of his constitutional rights to liberty and bail by suspending his parole without notice and incarcerating him under a non-bailable holder for violation of parole condition three.

2. The Authority denied petitioner his constitutional right to engage in a gainful occupation in holding that his possession of the bayonet was a violation of parole condition four.

3. Petitioner was denied an impartial on-site hearing officer due to the fact that Mr. Crew was the superior to petitioner's parole officer, and that Mr. Crew was illegally appointed to the status of Parole Officer V.

4. Petitioner was denied his right to assistance of counsel at his formal revocation hearing.

5. Petitioner was denied his right to cross-examine Mr. Crew at the formal revocation hearing.

6. Parole condition four is unconstitutionally overbroad.

7. Petitioner was denied his right to present witnesses and to present evidence which would mitigate against the revocation of his parole for possession of the bayonet.

8. The Authority deprived petitioner of his constitutional right to equal protection by imposing a three year penalty for violation of parole condition four when such offense if tried separately to a state court would receive a maximum penalty of six months.

## III. DISCUSSION

The petitioner's February 6, 1975 conviction does not moot this action. His sentence for this conviction is to run consecutively with his prior sentences and is presently on appeal. Therefore, petitioner is presently incarcerated as a result of the revocation of his parole. Release from such incarceration is properly sought through a writ of habeas corpus. See, *Cruz v. Skelton*, 502 F.2d 1101 (5th Cir. 1974).

In regard to petitioner's first contention, the Court finds that he was not denied his right to liberty and bail. There is no absolute right to bail under the Eighth Amendment. *United States ex rel Fink v. Hayd*, 287 F.Supp. 716 (E.D.La.1968), *aff'd* 5th Cir., 408 F.2d 7, *cert. denied* 396 U.S. 895, 90 S.Ct. 192, 24 L.Ed.2d 172; *Tunnell v. Wiley*, 369 F.Supp. 1260, 1265 n. 7 (E.D.Pa.1974). Further, the Eighth Amendment does not require that petitioner, as a detained parolee, be admitted to bail pending a hearing on revocation. *Burgess v. Roth*, 387 F.Supp. 1155 (E.D.Pa.1975). The issuance of a lawful detainer against a parolee is an independent state ground upon which his confinement is predicated. By itself, it does not raise a constitutional issue as to the denial of bail. *In re Whitney*, 421 F.2d 337 (1st Cir. 1970).

The remainder of petitioner's first contention, that he was entitled to notification prior to suspension of his parole, is without merit. A prisoner is released on parole subject to the parole authority's supervision of the prisoner's compliance with stipulated conditions for the balance of his sentence. See, *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). If a parolee fails to comply with such conditions his parole is subject to revocation. How-

ever, parole may not be revoked unless the following due process requirements are met:

(a) written notice of the claimed parole violation;

(b) disclosure to the parolee of evidence against him;

(c) opportunity to be heard in person and to present witnesses and documentary evidence;

(d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation);

(e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and

(f) a written statement by the fact finders as to the evidence relied on and the reasons for revoking parole.

*Morrissey, supra.* The parole revocation process is commenced by the filing of a detainer. *Arnold v. U. S. Board of Parole,* 390 F.Supp. 1177 (D.C.D.C.1975). It is this filing which invokes the above due process safeguards. However, such safeguards are not in effect in regard to the supervisory conditions of parole. These conditions restrict the activities of the parolee substantially beyond the ordinary restrictions imposed by law on an individual citizen. *Morrissey, supra.* Petitioner's assertion incorrectly attempts to expand the due process safeguards inherent in revocation proceedings to supervisory proceedings and must fail.

■ The petitioner's sixth contention is without merit. Parole condition four provides, "Never purchase, own, possess, use or have under your control, a deadly weapon or firearm." A parole condition is not overbroad as long as the language of the condition provides fair warning that certain conduct is prohibited and the condition is reasonably comprehensible in fixing the boundaries of prohibited activity. *Hoffa v. Saxbe,* 378 F.Supp. 1221 (D.C.D.C.1974). However, the requirement of reasonable certainty does not preclude the use of ordinary terms to express ideas which find adequate interpretation in common usage and understanding. *Birzon v. King,* 469 F.2d 1241 (2nd Cir. 1972). Parole condition four when viewed according to these standards is reasonably comprehensible and is not unconstitutionally broad.

■ The petitioner was not denied an impartial on-site hearing officer. The only qualification required of an on-site hearing officer is that the person be someone other than the parolee's immediate supervisory officer, the officer recommending revocation, or the officer reporting the parole violations. *Morrissey, supra.* Mr. Crew was not within the above disqualified class and therefore was a proper on-site hearing officer. Any administrative requirements or procedures pertaining to Mr. Crew's appointment to the grade of Parole Officer V are irrelevant to the propriety of his status as a hearing officer.

For the reasons hereafter set forth, petitioner's fourth, fifth and seventh contentions must fail.

■ Petitioner's violation of parole condition four was first brought out in petitioner's preliminary hearing, in which petitioner was represented by counsel, before the Akron Municipal Court. Petitioner has never contested possession of the bayonet in either his on-site or formal hearings. Therefore the sole issue presented is whether the bayonet is an antique and outside the scope of condition four. This issue is evidentiary in nature and not properly cognizable in federal court via a writ of habeas corpus. *Bradley v. Peyton,* 295 F.Supp. 636 (D.C.Va.1969). The due process clause affords the state wide latitude in fashioning rules of evidence. *Maness v. Wainwright,* 512 F.2d 88 (5th Cir. 1975). In Ohio, a dangerous weapon per se is any instrument which when used in an ordinary manner contemplated by its design and construction will, or is likely to, cause death or great bodily harm. *State v. Luckey,* 322 N.E.2d 354 (Ohio App. Hamilton Co. 1974). Considering these standards, the parole au-

thority did not err in holding the bayonet a deadly weapon.

■ Petitioner was not denied his right to assistance of counsel. Although a parolee is entitled to due process in revocation proceedings, he is not entitled to the full array of rights which the accused possesses in a criminal prosecution. *Morrissey, supra; U. S. v. Farmer,* 512 F.2d 160 (6th Cir. 1975). The state is not obligated to provide counsel for indigent parolees in every case. Appointment is within the sound discretion of the parole authority and considerable latitude must be allowed. *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *Forbes v. Roebuck,* 368 F.Supp. 817 (D.C.Ky.1974), *aff'd* 506 F.2d 1400 (6th Cir. 1974). Counsel may be appointed in the following circumstances: the parolee does not have the ability to effectively represent himself as determined by the requirement of due process; the parolee's version of the disputed issue can only be fairly represented by counsel; and mitigating circumstances can only be properly developed by counsel. If after consideration of the above factors, the parole authority determines the parolee can fairly represent himself, or if the parole violation is admitted, counsel need not be appointed. *Gagnon, supra.* Petitioner in the present case has a considerable history of self-representation in the state courts, federal courts, and before the parole authorities. Moreover, petitioner never contested the fact that he had possession of the bayonet. The sole issue was whether the bayonet was an antique and outside the scope of parole condition four. Such issue was not so complex as to entitle petitioner to appointed counsel.

■ Petitioner was not denied his right to present witnesses and to present mitigating evidence against revocation of parole. Petitioner was notified of his right to present witnesses and did in fact request the presence of nine witnesses. Petitioner alleged the testimony of such witnesses would establish him as an antique dealer. However, petitioner's status as an antique dealer was not at issue

and such testimony was not relevant. Petitioner admitted possession of the bayonet. Such admission reduced the issues before the parole authority to one, the character of the bayonet as a deadly weapon. The alleged testimony of the requested witnesses would not have been relevant regarding such issue. Although a parolee is entitled to due process in revocation proceedings he is not endowed with all the rights of an accused in a criminal prosecution. *Morrissey, supra; U. S. v. Farmer,* 512 F.2d 160 (6th Cir. 1975). Petitioner was afforded ample opportunity to present his witnesses. Petitioner was not entitled to travel expenses for such witnesses.

■ Petitioner was not denied his right to cross-examine Mr. Crew. The record shows that Mr. Crew was present and available for cross-examination. There being no dispute regarding the facts of the case, the Court is entitled to rely on the face of the record in determining whether petitioner is entitled to release. *U. S. ex rel. Holes v. Mancusi,* 423 F.2d 1137 (2nd Cir. 1970). Petitioner alleges that the scope of his cross-examination was unduly restricted. However, petitioner had only a conditional right to cross-examination and restrictions are valid if for good cause. *Morrissey, supra; Hickman v. Arkansas Parole Board,* 361 F.Supp. 864 (D.C.Ark.1973). In this case, cross-examination of Mr. Crew was not relevant to the evidentiary issue before the parole authority.

■ The petitioner's second contention is without merit. Parole condition four does not prevent petitioner from dealing in antiques. It merely prevents him from possessing deadly weapons. There are countless antiques that do not qualify as deadly weapons.

■ The petitioner's eighth contention must fail. Petitioner alleges that the revocation of his parole resulted in an additional three year sentence for possession of a deadly weapon. Petitioner asserts that this sentence denies him equal protection as possession of a deadly weapon, if tried separately to a state

court, is subject to a maximum six month sentence. Petitioner's assertion is not correct. Revocation deprives an individual of the conditional freedom which depended on observance of parole conditions. *Morrissey, supra.* Petitioner was returned to the SOCF to serve the remainder of his original sentence, not to serve an additional sentence. There has been no denial of equal protection.

### IV. CONCLUSION

The petitioner has not established nor does it otherwise appear that he was deprived of any constitutional rights warranting his release by writ of habeas corpus.

The application for a writ of habeas corpus is denied.

IT IS SO ORDERED.